Abraham Hirsch v. Commissioner.
Hirsch v. Commissioner
Docket No. 15911.
United States Tax Court
1948 Tax Ct. Memo LEXIS 14; 7 T.C.M. (CCH) 932; T.C.M. (RIA) 48256; December 20, 1948
*14 Petitioner for several years prior to 1944 had been in business operating an imprinting plant and the manufacture of leather novelties. He had one child, a daughter, who became 21 years of age in 1943. Soon after becoming of age she enlisted in the WACs. Petitioner's health was poor when she enlisted and became worse after she enlisted, so much so that he had to be absent from his business a considerable part of his time. In December 1943 his daughter visited him while on a furlough. They talked things over and agreed to form a partnership effective January 1, 1944. The partnership agreement was reduced to writing and signed January 10, 1944. The daughter was honorably discharged from the WACs in April 1944 and immediately returned home and entered into the services of the partnership business. On account of the condition of petitioner's health the greater part of the duties of management and operation of the business fell upon the daughter, although she did receive the benefit of petitioner's counsel and advice and had his active help to the extent his health permitted. Held, there was a bona fide partnership existing between petitioner and his daughter in 1944 and petitioner is *15 only taxable on his one-half share of the profits and is not taxable on his daughter's share of the profits. Charles Gadofsky, Esq., for the petitioner. Sheldon V. Ekman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1944 of $21,588.17. This deficiency is due to two adjustments made by the Commissioner to the income reported by petitioner on his return for 1944. These adjustments were: Unallowable deductions and additional income: (a) Partnership income
$29,232.38
(b) Enterainment expense
618.75 The above-mentioned adjustments were explained in the deficiency notice as follows: "(a) It is held that the alleged partnership income of H. & H. Imprint Company and Chadwick Leather Products Co. for the year 1944, after allowance of an annual salary of $3,600.00 to Mildred S. Hirsch, is taxable to you. "The deductions of $933.31, $939.69 and $2,916.32, claimed on the partnership return as travel, sundry selling, and general expenses, respectively, have been disallowed to the extent of $250.00, $300.00 and $2,000.00, respectively, *16 since such amounts have not been substantiated. "(b) The deduction of $1,237.50 claimed on your return as entertainment expense has been disallowed to the extent of $618.75, since such amount has not been substantiated." The petition assigns error as to each of the foregoing adjustments. However, in his brief the petitioner states "The petitioner concedes that portion of the deficiency that is attributed to the disallowance of the sum of $3,168.75 as a deduction for traveling, entertainment, general, and sundry expenses." Effect will be given to this concession in a recomputation under Rule 50. Findings of Fact The petitioner is an individual residing in New York City and for the taxable year 1944 he filed his income tax return with the Collector of Internal Revenue for the Second District of New York. Prior to January 1, 1944 petitioner was the sole stockholder of H & H Tip Printing Inc., and the individual proprietor of Peerless Leather Products Company. In 1937 the petitioner's wife died leaving an only child, Mildred Hirsch. Mildred was 15 years of age at that time and was attending school. Since 1937 Mildred attended petitioner's place of business after school hours, *17 observed the conduct of the business and generally helped in the office and the factory when requested to do so by her father such as running errands, answering the telephone and helping generally. In December of 1943 the petitioner and Mildred entered into an oral partnership agreement whereby the petitioner and his daughter were to conduct business as equal partners effective from January 1, 1944 under the firm names of H & H Imprint Company and Chadwick Leather Products Co. The terms of the partnership agreement were reduced to writing and on January 10, 1944 the partnership agreement and partnership certificates, as required by the laws of the State of New York, were executed by the parties. The partnership certificates were filed with the New York County Clerk on January 14 and January 15, 1944. At the time the partnership agreement was entered into it was expected that Mildred would receive an early discharge from the WACs on account of her father's ill health. However, as will appear hereafter, she was not discharged until April 27, 1944. The book value of H & H Tip Printing Company, Inc. and Peerless Leather Products Company assets was in the sum of $16,575.53 and Mildred *18 delivered to the petitioner five annual promissory notes totaling $8,287.30 in payment for a 50 per cent interest in the assets owned by the petitioner and the assets were turned over to the new partnership. The H & H Tip Printing Company Inc. was dissolved by the secretary of state on December 31, 1943. The notes which became due on January 1 of the years 1945, 1946 and 1947 were paid by Mildred to the petitioner out of her share of the profits of the partnership. The other two notes had not yet been paid at the time of the hearing of this proceeding. The written partnership agreement which was signed by Abraham, the father, and Mildred, the daughter, on January 10, 1944 reads as follows: "THIS AGREEMENT made as of the 1st day of January, 1944, between ABRAHAM HIRSCH (hereinafter called the 'first party') and MILDRED S. HIRSCH, his daughter (hereinafter called the 'second party'), each of whom resides in the Borough of Manhattan, City of New York: "WITNESSETH, as follows: "WHEREAS, the first party was the sole stockholder in the H & H Tip Printing Co., Inc.; and "WHEREAS, the said H & H Tip Printing Co., Inc. was dissolved in accordance with law and thereupon the first party *19 became the sole owner of all of the assets of the said corporation; and "WHEREAS, the value of said assets, consisting of merchandise, machinery, furniture and fixtures, was the sum of $3,560.54; and "WHEREAS, the first party prior to the 1st day of January, 1944, was the sole owner and proprietor of a business conducted by him under the name of Peerless Leather Products; and "WHEREAS, the value of said business on the 1st day of January, 1944 was the sum of $13,014.99, consisting of merchandise, machinery, furniture, fixtures and cash; and "WHEREAS, the total value of the assets of both of said businesses as aforesaid as of the 1st day of January, 1944, was the sum of $16,575.53; and "WHEREAS, the first party has sold to the second party as of the 1st day of January, 1944, a one-half interest in the said assets for a consideration of the sum of $8,287.76, representing one-half of the value of the assets theretofore owned by the first party, as hereinabove stated; and "WHEREAS, the parties hereto are desirous of becoming and remaining copartners upon the terms, conditions and covenants in this agreement specified; "NOW, THEREFORE, in consideration of the premises, IT *20 IS AGREED AS FOLLOWS: "1. The first party has sold and by these presents confirms the sale to the second party of a one-half interest in the assets of the businesses hereinabove mentioned previously owned by the first party, for the sum of $8,287.76. Said purchase price is to be paid by the second party to the first party in equal annual installments over a period of five years, commencing on the 1st day of January, 1945 and on the 1st day of January of each and every year thereafter, to and including January 1, 1949. Each payment is to be in the sum of $1,657.56. Each of said payments is to be secured by a negotiable promissory note made by the second party to the order of the first party; these notes are not to bear interest. "2. The parties agree to and hereby do become partners. "3. The partnership business shall be conducted under the trade name of H & H Imprint Company and Chadwick Leather Products Co., and said businesses shall be conducted in the Borough of Manhattan, City of New York, or at such other place or places as the parties may from time to time determine. "4. The partnership shall engage in the business of printing in all forms and of dealing in leather products, *21 either as manufacturer or jobber, and in such other business as the partners may from time to time determine. "5. The General Manager of said business shall be the first party, who shall have complete charge in actual operation of said business, based upon the policies which may be set up and agreed upon between the partners equally. "6. Neither partner shall assign or mortgage his interest in the partnership or otherwise encumber said interest, without the consent of the other partner in writing. "7. Each of the partners shall devote all of his time and energy to the business of the partnership. "8. Each partner shall bear, pay and discharge equally between them, all rents, and other expenses that may be required for the prosecution and management of the said business and all gains, profits and increases that shall come or arise from or by means of their said business shall be divided between them equally, and all losses that shall occur to their said business by depreciation of commodities, bad debts, or otherwise, shall be borne and paid between them equally. "9. All checks, notes and any other instruments for the payment of money or any other writing pledging the credit *22 or affecting the property of the partnership, shall be signed only by the first party, and not otherwise. "10. Neither partner shall, without the consent of the other party, draw, accept or sign, any bill of exchange, or promissory note, or contract any debt on account of the partnership, or employ any of the monies or effects thereof, or in any manner pledge the credit thereof, except in the usual and regular course of business. "11. Neither partner shall endorse any note, or otherwise become surety, for any person or persons whomsoever, without the consent of the other partner in writing. "12. No partner shall do or willingly suffer to be done, anything whereby, or by means whereof, the stock in trade, capital or property of the partnership may be attached or taken in execution. "13. Each partner shall punctually pay his present and future separate debts and engagements and shall at all times keep indemnified the other partner and the property of the partnership against the same, and all actions, proceedings, claims and demands in respect thereof. "14. Each of the partners shall make proper entries on the books of the partnership as to their respective transactions in *23 behalf of said partnership. "15. The first party shall have the right at any time during the continuance of the partnership to purchase the interest therein of the second party. In the event the first party so elects to purchase, he shall serve a notice in writing upon the second party, to the effect that as of a certain date specified in said notice, which shall be not less than sixty days after the service of said notice, the purchaser will purchase the interest of the second party. The value of the interest of the second party which shall be paid to her by the first party, shall be as shown on the books of the partnership as of the date specified in the notice of election to purchase. The notice shall be served by sending the same by registered mail to the second party at her last known address, and if said residence cannot be ascertained, then by leaving said notice at the place of business of the partnership. The value of the interest of the second party in the partnership shall be paid to her in equal monthly installments over a period of one year from the date that the value is thus ascertained. "The second party shall have the right to purchase the interest of the first *24 party in said partnership upon the same terms and conditions as hereinabove specified in case the first party elects to purchase the interest of the second party, except, however, that in such event, the second party shall pay in addition to the value of the interest of the first party as shown on the books of the partnership, the sum of $10,000.00, representing contributions made to the partnership by the first party in the nature of his business experience and judgment. In no event, however, shall the first party be required to pay to the second party in the event the first party elects to purchase the interest of the second party, more than the actual value of the second party's interest in the partnership as shown by the books of the partnership. "16. In case of the dissolution of said partnership for any reason whatsoever, the business then conducted by said partnership shall not be discontinued, but the first party may purchase the interest of the second party in said partnership upon giving the said second party or her legal representatives, thirty days' notice in writing of his intention so to do. Said notice may be given in the same manner as specified in paragraph '15' *25 herein. The price to be paid by the first party for the value of the second party's interest in the partnership shall be that as shown by the books of the partnership as of the date on which the election to purchase is made and shall be paid in equal monthly installments during a period of one year from the date that the value is thus ascertained. "IN WITNESS WHEREOF, the parties have hereunto set their respective hands and seals as of the day and year first above written. "[Signed] Abraham Hirsch "[Signed] Mildred S. Hirsch" During the years 1943, 1944 and 1945 the petitioner was suffering from physical and mental disorders and left the City of New York for short periods during these years because of his illnesses which finally resulted in his hospitalization in a mental sanitarium. He was operated upon in 1945 and since then his health has improved. H. & H Imprint Company was engaged in the business of imprinting on poweder and rouge containers various insignia and decorations for cosmetic firms. firms. All of these items were for the exclusive use of women. Chadwick Leather Products Co. manufactured small leather products consisting or change purses, wallets, powder *26 cases and kindred items. On May 18, 1943 Mildred became 21 years of age and ten days thereafter she joined the Women's Army Corps (WAC). In December of 1943 she made an application to be discharged on the ground of her father's physical and mental condition, which application was granted in April of 1944. She was honorably discharged April 27, 1944. From the date of her discharge, Mildred largely took over the management and responsibility of the partnership, including the hiring and firing of employees, the payment of all partnership obligations with checks previously signed in blank by the petitioner, traveling in and out of the state for the purpose of purchasing materials, and contacting cosmetic firms for the purpose of procuring new business. Mildred was in attendance at the place of business six days a week, arrived at eight o'clock in the morning and was the last to leave in the evening. During the period that the petitioner was in the city he spent approximately three hours a day at the place of business of the partnership during which time he sat at his desk and received reports from his daughter with respect to the partnership operations and they consulted together as *27 to business policies, fixing prices and the conduct of the business in general. A partnership return was filed for the year 1944 under the name of H & H Imprint Company and Chadwick Leather Products Co. The net income reported on that partnership return was $60,564.77 and Schedule I of the return entitled "Partners' Shares of Income and Credits" allocated $30,282.39 of the income of the partnership to Abraham Hirsch and $30,282.38 to Mildred S. Hirsch. Abraham returned the part allocated to him on his individual return and paid taxes thereon. Mildred returned the part of the partnership income allocated to her and paid taxes of $13,373.79 thereon. All of the income from the partnership for the year 1944 was withdrawn by the petitioner and Mildred in accordance with their partnership percentages during the years 1944 and 1945. Mildred used her part of the partnership income for the payment of the $13,373.79 income taxes above stated, for various personal expenses, for use in paying part of the notes she had executed to her father in payment for one-half interest in the assets of H & H Tip Printing Inc. and Peerless Leather Products Company and for investment in certain securities *28 which she purchased in her own name and owns in her own right. There was a bona fide partnership existing between petitioner, Abrham Hirsch, and his daughter, Mildred S. Hirsch, for the year 1944. Opinion BLACK, Judge: The only issue which we have to decide in this proceeding is whether there was a bona fide partnership existing between Abraham Hirsch and his daughter, Mildred S. Hirsch, during the year 1944. There is no issue as to the amount of the partnership income as determined by the Commissioner. The petitioner concedes the correctness of the adjustments which the Commissioner has made in the partnership income for the year 1944. But petitioner does not concede the correctness of the Commissioner's action in adding to his individual income Mildred's one-half of the partnership income. Petitioner contends that there was a bona fide partnership existing between himself and Mildred throughout the year 1944, that Mildred was taxable on her one-half of the partnership income and petitioner was taxable on his one-half and that there is no warrant in law for the Commissioner adding to the income reported by him on his income tax return Mildred's one-half of the partnership *29 income. He says that Mildred has returned her share of the income on her own return, has paid taxes thereon and that is all the law requires. The Commissioner relies, in support of his determination, largely on the Supreme Court's decision in and . Petitioner contends that under the facts of the instant case the Tower and Lusthaus cases are not controlling. We agree with petitioner. The case we have here is one where a father had in prior years established a business in two lines of endeavor which had grown to be profitable. His daughter when she reached the age of 21 years joined the WACs. The father was in poor health when she joined and his health became worse after she joined, so much so that he had to be away from his business a considerable part of his time from then on, in 1943. Mildred visited her father the latter part of 1943 and found his health very poor. They talked things over and agreed they would form a partnership to begin January 1, 1944 and that Mildred would apply for a discharge from the WACs on account of her father's poor health and that when and if she secured *30 her discharge she would return at once and devote her full time to the partnership business. The agreement to form a partnership between Mildred and Abraham was reduced to writing January 10, 1944 and the partnership agreement is embodied in our findings of fact and need not be repeated here. Mildred was discharged from the WACs April 27, 1944 and returned at once to New York City and entered actively into the management and operation of the partnership business. She gave all of her time to it and the evidence shows that the business grew and prospered throughout 1944. It is true that she had the advice and counsel of her father in the management and control of the business, although he was not physically and mentally able to be as active as he had been in former years. We think the evidence makes it entirely clear that Mildred rendered important and vital services to the partnership business from the time she returned in April 1944 throughout the remainder of the year. Even if it be assumed that Mildred did not, by the execution of her five promissory notes to her father, contribute any capital to the business originating with her, nevertheless we still think she was a partner. *31 Since she rendered vital services to the partnership business in 1944 it is immaterial that she did not contribute capital, ; . Petitioner's association of her in the business as a partner was in recognition of such services to be performed and which she did perform throughout the year after her discharge from the WACs. The crediting of her share of the profits and her subsequent withdrawal of her share of these profits for her own use are evidence that both parties gave substantive recognition to the partnership agreement. We hold that during the year 1944 there was a bona fide partnership existing between petitioner and his daughter, Mildred, and that the Commissioner erred in taxing Mildred's one-half of the partnership profits to petitioner. Cf. Isaac Blumberg, 11 T.C. , No. 80 (promulgated October 25, 1948). In a recomputation under Rule 50 petitioner should only be taxes on one-half of the partnership profits for the year 1944. Decision will be entered under Rule 50.